UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| EUGENE GIBSON and S.G., | : | CIVIL ACTION NO. |
| --- | --- | --- |
| Plaintiffs, | : | 3:18-CV-01825 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ABBY DOLLIVER, et al., | : | APRIL 1, 2019 |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 21), MOTION TO DISMISS (DOC. NO. 26), MOTION FOR SUMMARY JUDGMENT (DOC. NO. 29), MOTION TO DENY NOTICE OF REMOVAL ON JURISDICTION (DOC. NO. 38)**

**I.     INTRODUCTION**

On October 9, 2018, the plaintiffs, Eugene Gibson ("Gibson") and his daughter ("S.G."), filed this pro se action in Connecticut Superior Court against the defendants, Abby Dolliver ("Dolliver"), Jamie Bender ("Bender"), and Nakia Hamelett ("Hamelett"). See generally Complaint ("Compl.") (Doc. No. 1-1).  The Complaint asserts a variety of federal and state law claims against the defendants, all of which are predicated on the defendants' alleged failure to provide S.G. with adequate special education services. See id. at 4-6, 17.

On November 6, 2018, Dolliver and Bender filed a Notice of Removal, which Notice indicated that Hamelett had also consented to removing the action from Connecticut Superior Court to this court.  See Notice of Removal (Doc. No. 1) at ¶ 7. On January 9, 2019, Hamelett moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  See Motion to Dismiss ("Hamelett's Mot. to Dismiss") (Doc. No. 21).  That same day, Dolliver and Bender also moved to dismiss all of the plaintiffs' claims or, in the alternative, to strike certain allegations from the Complaint under Rule 12(f) and to order a more definite statement

1

under Rule 12(e). See Motion to Dismiss ("Dolliver & Bender's Mot. to Dismiss") (Doc. No. 26); see also Memorandum of Law in Support of Defendants Abby Dolliver's and Jamie Bender's Motion to Dismiss, Motion to Strike, and/or Motion for More Definite Statement ("Dolliver & Bender's Mem.") (Doc. No. 25) at 10.

On January 29, 2019, this court held an in-person status conference with the parties, during which time it raised sua sponte the issue of whether the defendants' removal of the case from state court had properly complied with the rule of unanimity. See Minute Entry (Doc. No. 32). On February 8, 2019, the defendants jointly filed a memorandum of law addressing this issue. See Joint Memorandum of Law in Support of Defendants' Notice of Removal ("Defs.' Mem. on Removal") (Doc. No. 34) at 1.

The plaintiffs have not filed opposition papers to the defendants' Motions to Dismiss, even though the defendants notified them of the pending Motions, as required by Rule 12(a) of the Local Civil Rules of the United State District Court for the District of Connecticut. See Notice to Self-Represented Litigant Concerning Motion to Dismiss (Doc. Nos. 22, 24). The plaintiffs have, however, filed various other documents. Specifically, on January 16, 2019, the plaintiffs filed a Motion for Summary Judgment (Doc. No. 29). On March 11, 2019, they filed a document titled "Motion to Deny Notice of Removal Based on Jurisdiction," which document the court has interpreted as a motion to remand the case to the Connecticut Superior Court. See Motion to Deny Notice of Removal on Jurisdiction ("Pls.' Mot. to Remand") (Doc. No. 38). Finally, on March 20, 2019, the plaintiffs submitted a Letter (Doc. No. 39) that largely repeated the arguments set forth in their Motion for Summary Judgment.

For the following reasons, the plaintiffs' Motion to Remand is denied; the defendants' Motions to Dismiss for lack of subject matter jurisdiction are granted; and the plaintiffs' Motion for Summary Judgment is denied as moot.

## II. BACKGROUND[1]

S.G. is 14 years old and currently a 9th grade high school student in the Norwich Public Schools ("NPS"). See Declaration of Jamie Bender ("Bender's Decl.") (Doc. No. 30) at ¶¶ 1, 3; Compl. at 6. Gibson is S.G.'s father. Bender's Decl. at ¶ 1; Compl. at 5. Dolliver is the NPS Superintendent, Bender is the NPS Director of Student Services and Special Education, and Hamelett is a psychologist who was hired by the NPS to evaluate S.G. in 2018. Bender's Decl. at ¶ 1.

When S.G. was five years old, the NPS determined that she qualified for special education services. Id. at ¶ 3. As a result, it created an Individualized Education Program ("IEP") for her. Id. In 2018, the NPS ordered a formal Risk Assessment of S.G. in light of S.G.'s behavior at school. Id. at ¶ 4. The NPS also decided that, until the Risk Assessment was completed, S.G. should not attend school, but should instead receive 10 hours per week of homebound instruction. Id.

Although the Complaint in this case is difficult to decipher, all of the plaintiffs' claims appear to stem from these 2018 changes to S.G.'s IEP. See Compl. at 5 (alleging that the defendants "have broken [the] law and code by not providing the services [they] were hired to provide as part of the special education"). In particular, the plaintiffs allege that S.G. has not received any special education since "being placed in

---

[1] Because subject matter jurisdiction is contested in this case, the court will consider not only the allegations in the Complaint, but also materials outside the pleadings, including the parties' affidavits. See Romano v. Kazacos, 609 F.3d 512, 520 (2d Cir. 2010).

home bound tutoring," id.; that S.G. has been wrongfully separated from her high school peers, id. at 6; and that, as a result, S.G. has experienced emotional distress, loss of sleep, loss of productivity, pain and suffering, mental anguish, and feelings of distress, anxiety, depression, and grief, id. at 17. The Complaint seeks money damages from the defendants, alleging that they have violated a variety of state, federal, and international laws, including the United Nations Declaration on the Rights of Indigenous Peoples, id. at 12-13; the Thirteenth, Fourteenth, and Fifteenth Amendments of the United States Constitution, id. at 6-7; and Connecticut laws on fraud, defamation, malpractice, and intentional infliction of emotional distress. See id. at 8-10, 17-18.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. Id. In determining whether the plaintiff has met this burden, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). In addition, a district court "may refer to evidence outside the pleadings" when "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[.]" Makarova, 201 F.3d at 113.

### IV. DISCUSSION

The court will first address whether this case should be remanded to Connecticut Superior Court. It will then address the defendants' Motions to Dismiss and the plaintiffs' Motion for Summary Judgment.

4

A.  Remand

During an in-person status conference held on January 29, 2019, this court raised the concern that removal of the case may have been improper because Hamelett had not signed Dolliver and Bender's Notice of Removal or filed a written notice of consent to removal. See Defs.' Mem. on Removal at 1.

Section 1446 of title 28 of the United States Code outlines the procedures for removing a civil action from state court to federal court. See Teamsters Local 404 Health Servs. & Ins. Plan v. King Pharm., Inc., 906 F.3d 260, 266 (2d Cir. 2018). In 2011, that statute was amended to require that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S. § 1446(b)(2)(A). This amendment codified the well-established rule that removal requires the unanimous consent of all defendants, also known as the rule of unanimity. See Ortiz v. City of New York, No. 13 CIV. 136 JMF, 2013 WL 2413724, at *1 (S.D.N.Y. June 4, 2013).

The statute did not address what form a consent to removal must take, see 28 U.S.C. § 1446(b)(2)(A) (providing merely that all defendants "must join in or consent to the removal of the action"), and the Second Circuit has not addressed the question, see Pietrangelo v. Alvas Corp., 686 F.3d 62, 66 (2d Cir. 2012); ("Although we have not yet advised what form a consent to removal must take, we agree with the district court that the remaining defendants must independently express their consent to removal."); Abdullah v. Erdner Bros, Inc., No. 3:14-CV-01742-VAB, 2015 WL 1190141, at *4 (D. Conn. Mar. 16, 2015) ("The Second Circuit has not yet advised what form a consent to removal must take[.]") (internal quotation marks omitted). However, district courts in this Circuit have generally required each defendant to "either sign the notice of removal or

subsequently provide the Court with their unambiguous written consent to removal within [ ] thirty days [of receiving service of the initial pleading]." Metro. Transp. Auth. v. U.S. Fid. & Guar. Co., No. 14 CIV. 9059 PAE, 2015 WL 1730067, at *4 (S.D.N.Y. Apr. 14, 2015) (collecting cases). Most of these district courts have also held that "it is insufficient for a defendant who has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf." Id.; see also Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc., No. 12 CIV. 5557 JPO, 2013 WL 1234958, at *6 (S.D.N.Y. Mar. 26, 2013) (collecting cases); but see Doe v. Zucker, No. 117CV1005GTSCFH, 2018 WL 3520422, at *5 (N.D.N.Y. July 20, 2018) (concluding on the basis of caselaw from other circuits that the rule of unanimity was satisfied when the notice of removal represented that a non-signing defendant had consented to the removal).

The defendants in this case acknowledge that Hamelett "did not sign the notice of removal or file a notice of consent to removal until January 30, 2019." See Defs.' Mem. on Removal at 3. Instead, Hamelett merely advised Dolliver and Bender of her consent to removal, and those two defendants, in turn, represented such consent to the court. See id. The defendants also recognize that this form of consent does not satisfy the rule of unanimity as set forth by "the great weight of judicial authority from the District Courts in this jurisdiction[.]" Id. at 6. Nevertheless, the defendants argue that, because the Second Circuit has not specified the form of consent required by section 1446, this court should consider adopting a more flexible approach to the unanimity requirement. See id. at 6-9. In particular, the defendants note that the Eighth Circuit,

6

among others, has held that this requirement is satisfied when one defendant represents in his removal notice that his codefendants consent to the removal.[2] Id.

However, this court need not decide whether Hamelett's representation of consent satisfies the rule of unanimity because, even if her consent was defective, the time period for remanding the case on the basis of such a defect has expired. Specifically, section 1447(c) of title 28 of the United States Code provides:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

The Second Circuit has interpreted this provision as prohibiting district courts from remanding a case more than 30 days after removal, except when the basis for remand is lack of subject matter jurisdiction. See Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth., 435 F.3d 127, 131 (2d Cir. 2006); see also Siverls-Dunham v. Seung Huen Lee, No. 05 CIV. 7518 (PKC), 2006 WL 510504, at *3 (S.D.N.Y. Feb. 27, 2006). Moreover, courts in this Circuit have held that failure to comply with the rule of unanimity is a procedural, rather than a jurisdictional, defect. See, e.g., Bank of Am. Nat. Ass'n v. Derisme, No. 3:10CV900 MRK, 2010 WL 3211066, at *9 (D. Conn. Aug. 13, 2010) ("Although the Second Circuit has apparently not commented on this specific issue, other Courts of Appeals and district courts in this Circuit have held that a violation of the rule of unanimity is, like an untimely removal notice, a procedural defect which may be

---

[2] The court notes that "the circuits have split on this issue." Griffioen v. Cedar Rapids & Iowa City Ry. Co., 785 F.3d 1182, 1186 (8th Cir. 2015). While "[t]he Fourth, Sixth, and Ninth Circuits have held that a statement in one defendant's timely removal notice that its codefendants consent is sufficient[,] [t]he Seventh and Fifth Circuits . . . have suggested that in most situations a defendant may not give notice of consent on another defendant's behalf." Id. (internal citations omitted).

7

waived by the plaintiff.") (collecting cases); Allstate Ins. Co. v. Zhigun, No. 03 CIV. 10302 (SHS), 2004 WL 187147, at *3 n.2 (S.D.N.Y. Jan. 30, 2004) (same); Flagler v. Budget Rent A Car Sys., Inc., 538 F. Supp. 2d 557, 558 n.1 (E.D.N.Y. 2008) (same); Johnson v. Adams, No. 914CV811GLSDEP, 2016 WL 1178754, at *2 (N.D.N.Y. Mar. 23, 2016) (same). Thus, because concerns about Hamelett's consent were first raised on January 29, 2019, well after the 30-day period for objecting to procedural defects had expired, this court has no authority to remand the case to state court for failure to comply with the rule of unanimity. Accordingly, the plaintiffs' Motion to Deny Notice of Removal on Jurisdiction (Doc. No. 38), construed as a motion to remand, is denied.

B. Motion to Dismiss

The defendants argue that any claims brought by S.G. must be dismissed because, inter alia, S.G. is a minor who lacks capacity to sue on her own behalf. See Memorandum of Law in Support of Motion to Dismiss Adversary Proceeding ("Hamelett's Mem.") (Doc. No. 21-1) at 4-5; Dolliver & Bender's Mem. at 1 n.1. As to Gibson, the defendants argue, inter alia, that this court lacks subject matter jurisdiction over any claims brought by him because he failed to exhaust his administrative remedies under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1401, et seq. See Dolliver & Bender's Mem. at 10-16. The court will address these arguments in turn.

1. S.G.

Pursuant to Federal Rule of Civil Procedure 17(b), only individuals with capacity to sue in state court may sue on their own behalf in federal court. See also Mulready v. Mulready, No. CIV 306CV00934 AWT, 2007 WL 1791120, at *1 (D. Conn. June 16, 2007). In Connecticut, "[i]t is well established that a child may bring a civil action only

8

by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented." Orsi v. Senatore, 230 Conn. 459, 466–67 (1994) (internal quotation marks omitted, emphasis added). Connecticut law defines a "minor" as a person under 18 years of age. Conn. Gen. Stat. § 1-1d.

The record in this case shows that S.G. is 14 years old, and therefore a minor under Connecticut law. See Bender's Decl. at ¶ 3 (testifying that S.G. was 5 years old in 2010). The plaintiffs do not dispute this fact. Thus, because S.G. does not have capacity to sue in federal court, she is dismissed as a plaintiff in this action.

Furthermore, to the extent that the Complaint seeks to have Gibson bring claims on behalf of S.G., his daughter, those claims must be dismissed because Gibson is a pro se litigant. In the Second Circuit, it is well established that a non-attorney parent may not bring an action on behalf of his child without representation by counsel. See Berrios v. New York City Hous. Auth., 564 F.3d 130, 133 (2d Cir. 2009); Armatas v. Maroulleti, 484 F. App'x 576, 577–78 (2d Cir. 2012). Thus, because the records of this court do not show that Gibson is a member of the bar, and because Gibson does not claim otherwise, the court dismisses all causes of action that Gibson seeks to assert on behalf of S.G. or that S.G., a minor, seeks to assert on her own behalf.

      2.     Gibson

The defendants argue, inter alia, that this court lacks subject matter jurisdiction over any claims that Gibson seeks to bring on his own behalf because Gibson failed to exhaust the administrative remedies under the IDEA. See Dolliver & Bender's Mem. at 11-16.

The IDEA is "a Spending Clause statute that seeks to ensure that all children with disabilities have available to them a free appropriate public education." Schaffer ex

rel. Schaffer v. Weast, 546 U.S. 49, 51 (2005) (internal quotation marks omitted). Under this statutory scheme, "school districts must create an 'individualized education program' (IEP) for each disabled child." Id. (internal quotation marks omitted). Specifically, "[s]tate educational authorities must identify and evaluate disabled children, §§ 1414(a)-(c), develop an IEP for each one, § 1414(d)(2), and review every IEP at least once a year, § 1414(d)(4)" Id. at 53. "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." Id.

The IDEA also provides "a variety of procedural safeguards with respect to the provision of free appropriate public education by school districts." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 81–82 (2d Cir. 2005) (internal quotation marks omitted). Most relevant to this case, "[p]arents are [ ] entitled to request a due process hearing in order to present complaints as to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (internal quotation marks omitted). In response to such a complaint, "a state or local hearing officer must conduct an impartial due process hearing and render a decision." Lillbask, 397 F.3d at 82. If a parent or guardian is dissatisfied with that decision, he or she "may appeal to the State educational agency, which in turn must conduct an impartial review." Lillbask, 397 F.3d at 82 (internal quotation marks omitted).

Failure to exhaust the IDEA's administrative remedies deprives the court of subject matter jurisdiction over suits filed under the IDEA. Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008). Furthermore, even if a plaintiff does not plead an IDEA violation, the IDEA exhaustion requirement will apply when the plaintiff "assert[s] claims for relief available under the IDEA, regardless of the statutory basis of [his] complaint[.]" L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x 56, 57 (2d Cir. 2016) (quoting Cave, 514 F.3d at 245-46). As the Second Circuit has explained, "[t]he purpose of the exhaustion rule is to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." Cave, 514 F.3d at 245-46. As a result, plaintiffs cannot sidestep the IDEA's exhaustion requirement by "cloak[ing] [their claims] in legal theories distinct from IDEA[.]" DiStiso v. Town of Wolcott, 2006 WL 3355174 at *5 (D. Conn. Nov. 17, 2006).

Nor can they avoid the IDEA's administrative procedures by bringing claims for damages, even though such relief is not available under the IDEA itself. See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486, 487-88 (2d Cir. 2002). The Second Circuit has held that "'[r]elief available [under the IDEA] means relief for the events, condition, or consequences of which the person complains, even if not necessarily relief of the kind the person prefers." Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 790 (2d Cir. 2002) (internal quotation marks and alterations omitted). Thus, "if the 'theory' behind a claim relates to the 'education of disabled children,' IDEA exhaustion is required," even if the claim is pled under a different statute and even if it seeks relief that is not available under the IDEA. L.K., 641 F. App'x at 57; see also

11

Stropkay v. Garden City Union Free Sch. Dist., 593 F. App'x 37, 40 (2d Cir. 2014) ("Where, as here, plaintiffs raise grievances related to the education of disabled children, they are obligated to exhaust their administrative remedies before filing suit in federal court[.]") (internal quotation marks omitted).

While the IDEA's exhaustion requirement is broad in scope, it is "not an inflexible rule." Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002). The Second Circuit has identified three situations where exhaustion should be excused, namely, where "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." Id. "The burden of proving the applicability of one of these exceptions falls on the party seeking to avoid exhaustion." Id.

In this case, although Gibson does not plead a violation of the IDEA, all of his claims rest on the core allegation that S.G. was provided inadequate special education services.[3] See id. In particular, Gibson seeks to challenge the defendants' decisions concerning the educational placement of S.G. in homebound instruction and the quality of education services provided to her through that instruction. See id. The IDEA, however, affords a remedy for precisely these types of grievances. See 20 U.S.C. §

---

[3] The court notes that, although Gibson cannot assert claims on behalf of S.G. because he is not an attorney, see, supra, at 9, Gibson can prosecute IDEA claims on his own behalf. Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535 (2007). The Supreme Court has explained that the IDEA "creates in parents an independent stake not only in the procedures and costs implicated by this process but also in the substantive decisions to be made." Id. at 531. As a result, parents have standing to pursue IDEA claims on their own behalf. E.M. v. New York City Dep't of Educ., 758 F.3d 442, 451 (2d Cir. 2014).

1415(b)(6)(A) (allowing aggrieved parties to challenge any decision "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."). As a result, the IDEA's exhaustion requirement applies to all of the claims raised in the Complaint.[4]

Moreover, Gibson does not dispute that he did not request a due process hearing, file a complaint with the relevant state or local agency, or otherwise seek recourse from the administrative procedures established by the IDEA. Nor does Gibson argue that he should be excused from exhausting administrative remedies. See Murphy, 297 F.3d at 199 (identifying exceptions to the IDEA's exhaustion requirement). Indeed, none of Gibson's submissions acknowledge, much less respond to, the defendants' arguments concerning exhaustion under the IDEA. As a result, Gibson has not carried his burden of showing that this court has subject matter jurisdiction over his causes of action. The Complaint is therefore dismissed in its entirely for lack of subject matter jurisdiction.

## V.  CONCLUSION

For the foregoing reasons, the plaintiffs' Motion to Deny Notice of Removal on Jurisdiction (treated by the court as a motion to remand) (Doc. No. 38) is denied, and the defendants' Motions to Dismiss (Doc. Nos. 21, 26) are granted. As a result, the plaintiffs' Motion for Summary Judgment (Doc. No. 29) is denied as moot.

---

[4] Indeed, even the plaintiffs' allegations that the defendants committed "acts of slavery" arise out of the defendants' decisions regarding the identification, evaluation, and educational placement of S.O. See Compl. at 6 (asserting that the defendants have committed "acts of slavery" by placing S.O. "on a college campus away from her peers which [sic] are high school students" and by not providing her with "course work or studies from [sic] her level of schooling"). Thus, in addition to being frivolous and entirely unsupported by factual allegations, the plaintiffs' Thirteenth Amendment claim is dismissed for failure to exhaust the IDEA's administrative remedies.

The Complaint is dismissed without prejudice. Gibson may file an Amended Complaint within thirty days of the date of this Ruling if he can show that he either (1) properly exhausted the administrative remedies under the IDEA, or (2) qualifies for one of the exceptions to the IDEA exhaustion requirement.

If Gibson wishes to pursue claims on behalf of S.G., he must retain counsel and said counsel must file an appearance in this case within thirty days of the date of this Ruling. If Gibson is unable to retain counsel, he may file a motion for appointment of counsel within thirty days of the date of this Ruling. However, the court reminds Gibson that such a motion will only be granted if this court determines that "the appointment will serve the interests of justice based upon factors such as (a) a party's apparent ability or inability to afford legal counsel, (b) the likelihood that counsel may be secured under alternative fee arrangements, and (c) the apparent merit of the party's claims or defenses." D. Conn. L. R. 83.10(c)(1).

**SO ORDERED.**

Dated at New Haven, Connecticut this 1st day of April, 2019.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge